UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | |
|---|---|
| DAVID C. HAVNER, ) | |
| ) | |
| Petitioner, ) | |
| ) | No. 1:08-CV-126/1:01-CR-194 |
| v. ) | |
| ) | Chief Judge Curtis L. Collier |
| UNITED STATES OF AMERICA ) | |
| ) | |
| Respondent. ) | |

## **MEMORANDUM**

*Pro se* petitioner David C. Havner ("Petitioner") filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 (Court File No. 137) and a supporting memorandum (Court File No. 138).[1] The United States filed a response (Court File No. 143), to which Petitioner replied (Court File No. 147).

Having reviewed the materials submitted, together with the record of the underlying criminal case, the Court finds they conclusively show Petitioner is not entitled to relief on the claims asserted and an evidentiary hearing is not needed in this matter. *See United States v. Todaro*, 982 F.2d 1025, 1028 (6th Cir. 1993). Accordingly, the Court will decide the matter and explain the reasons Petitioner's asserted grounds for relief are without merit. *See* Rule 8(a) of the Rules Governing Section 2255 Proceedings in the United States District Courts.

---

[1] All citations are to the criminal case number: 1:01-CR-194.

**I.    BACKGROUND**

   **A.    Factual Background[2]**

Petitioner's criminal case arose following his involvement in four separate incidents. On April 15, 1999, law enforcement executed a search warrant on Petitioner's residence, discovering methamphetamine in the process. Over one year later, on August 18, 2000, law enforcement returned to Petitioner's residence, where they again discovered methamphetamine in addition to equipment which had been used to manufacture methamphetamine. On February 19, 2001, a fire erupted from a clandestine methamphetamine laboratory in a house located in South Pittsburgh, Tennessee. During the fire, Petitioner was burned and required emergency medical treatment. On October 11, 2001, law enforcement observed several components necessary for methamphetamine manufacturing in plain view outside of Petitioner's residence. When Petitioner saw the officers, he removed the items to his back yard and attempted to set them on fire.

Based upon this conduct, Petitioner was charged in an eight-count indictment. Four of the counts charged Petitioner with possessing equipment and chemicals used to manufacture methamphetamine on each of the four dates above. Petitioner was also charged with one count of conspiring to manufacture methamphetamine, one count of attempting to manufacture methamphetamine, and one count of aiding and abetting an attempt to manufacture methamphetamine. The indictment also charged Petitioner with being a felon in possession of ammunition.

On the day of trial, the parties advised the Court they had settled on a plea agreement, but the Court rejected the agreement because the deadline for plea negotiations had passed (Court File

---

[2]The following information is taken from the Presentence Report, unless otherwise noted.

No. 108 at 2–6). Thereafter, Petitioner entered an unconditional plea to all counts of the indictment, except the count charging Petitioner with being a felon in possession of ammunition, which the Government dismissed.

Petitioner's guilty plea followed an extensive oral colloquy with the Court. During this colloquy, the Government summarized the evidence against Petitioner as follows:

> I'd like to start with Count 2 . . . which charges the possession of meth chemicals and equipment, and that was on April 15th of 1999. On that date, Marion County Sheriff's Detective Brent Myers served a search warrant at the residence of David and Tracy Havner in Marion County, Tennessee. Detective Myers found a coffee filter with methamphetamine residue in it. It was laboratory tested and came back to be tested positive for the presence of meth, 0.1 gram. There was also a box of pseudoephedrine pills and a set of . . . scales. We would have called Agent Isom to establish that those items were in fact part of meth equipment. . . .
>
> With respect to Count 3, Your Honor, on August 18, 2000, Mr. Havner is charged with the – again, with possession of equipment and chemicals used to manufacture methamphetamine. And, again, on that date, Detective Brent Myers served a search warrant at [petitioner's residence]. Found during the execution of the search warrant were the components for a methamphetamine lab, including a bottle with red residue, two gallons of Coleman fuel, one glass coffee pot with an unknown liquid, a metal can with a liquid, one box of plastic bags, hot plate, used coffee filters with residue, another jar with two-layer liquid, and several other jars with liquids. . . . The contents of that jar was tested by the TBI crime lab, and it did in fact test positive for the presence of methamphetamine. Again, Agent Isom would have testified those items are commonly used in the manufacture of methamphetamine.
>
> On February 19, 2001, there was a house fire . . . in South Pittsburgh, Tennessee. Mr. Havner was present during that fire. It was a meth lab that had exploded. Mr. Havner went to the hospital after the explosion of the meth lab. . . . The fire department came out, put out the fire. When they saw there was a meth lab there, they called the police. Sergeant Wayne Jordan . . . took an inventory of all the items, and, again, it was the same kind of items – Coleman fuel, Red Devil lye, a gasser that's used to gas off methamphetamine liquid or oil. And he also submitted a liquid to the TBI crime lab, and it also tested positive for the presence of methamphetamine. And Mr. Havner was charged in Counts 5 and 6, one with the attempt to manufacture, and the second one was with the possession of meth chemicals and equipment. . . .
>
> Count 7 . . . and 8 charge on October 11th of 2001, Deputy Hubbard with the Marion County Sheriff's Department . . . went to [petitioner's] residence to talk to Mr. and

> Mrs. Havner, and in plain view he saw a gallon of tincture of iodine, Coleman fuel, and muriatic acid. At this point, Mr. David Havner came out of the residence. He had a struggle with Deputy Hubbard. Tracy Havner . . . set those items on fire. Tracy Havner later gave consent to search the residence, and there were numerous items found relating to the manufacture of methamphetamine, many of the similar items – jars with two-layers liquids, Coleman fuel, and things like that, ephedrine pills, HEET gas line antifreeze, another gas generator, a flask. All these things, of course, are used to manufacture methamphetamine, and Agent Isom would testify to that. . . .
>
> Going back to Count 1, the conspiracy, there would be several witnesses who would testify that they had assisted Mr. Havner in the manufacture of methamphetamine, they had either purchased pills for him or assisted him in actually doing the methamphetamine cooks or were aware that he was also involved in the distribution of methamphetamine. And this all occurred in or around Marion County, Tennessee, throughout the dates listed in the conspiracy in the indictment.

(Court File No. 108 at 19–23). Following this account, the Court asked Petitioner if it was "true and correct," to which Petitioner confirmed that it was (*id.* at 23). Petitioner also confirmed he wished to plea guilty because he was in fact guilty (*id.*). The Court then accepted Petitioner's plea as being knowing, voluntary, and "supported by an independent basis in fact containing each of the essential elements of the offense" (*id.*).

Following Petitioner's guilty plea, the United States Probation Office prepared a presentence report. In this report, the probation officer considered state records indicating Petitioner had purchased fifty cases of matches from Sam's Club during the period relevant to his offenses. The probation officer calculated this quantity of matches would yield 600 grams of red phosphorus, which would convert into 300 grams of methamphetamine. Based upon this quantity of methamphetamine, Petitioner's base offense level was 28. Petitioner was assessed a three-level enhancement for the risk of harm to human life posed by the explosion and fire in February 2001, and a two-level reduction for acceptance of responsibility, yielding a total offense level of 29. Given a criminal history category of III, Petitioner's Guideline range was 108 to 135 months.

At a sentencing hearing on December 20, 2002, Petitioner objected to the three-level enhancement and claimed he was not manufacturing methamphetamine, nor was he even present, when the laboratory initially caught fire (Court File No. 109 at 3–4). In response, the United States presented Petitioner's wife and co-defendant, who testified that, shortly before the explosion and fire, Petitioner was helping a third-party named Darrell Kilgore manufacture methamphetamine at that location (*id.* at 11–13). She also testified three children lived in the house, and they were "in and out" of the residence while methamphetamine was being manufactured (*id.* at 11-12, 22-23).

Petitioner testified that although he was guilty of manufacturing methamphetamine on various occasions, he had no involvement with the lab that "blew up" on February 19, 2001. He testified he was working on a car parked in front of the house when the fire started. He stated he immediately ran into the house after the explosion to see whether any children were trapped inside and that his hands were burned in searching the house (*id.* at 26–29, 34–36, 42–43). Petitioner was confronted with the fact that his testimony was inconsistent with his guilty plea to Counts Five and Six, for attempting to manufacture methamphetamine and for possessing components necessary to manufacture methamphetamine, on that date. Petitioner responded he pleaded guilty to those offenses so the Court would accept his plea on the other counts (*id.* at 28–29).

Based upon this testimony, the Court *sua sponte* raised the issue of whether Petitioner should properly be subject to an additional sentencing enhancement for causing a substantial risk of harm to a minor (*id.* at 60). Petitioner requested a continuance to allow time to respond to this issue, which the Court granted (*id.*).

The sentencing hearing resumed on May 23, 2003. Petitioner called Darrell Kilgore, who testified Petitioner entered the house with the methamphetamine laboratory only after it was burning

5

(Court File No. 111 at 5–7, 9–11). The Court observed this testimony was inconsistent with Petitioner's guilty plea and the testimony of Petitioner's wife. Petitioner's counsel responded Petitioner had "always maintained that he did not have anything to do with [the house fire]" (*id.* at 27). Petitioner asserted the testimony of his wife was not credible, because she had divorced him (*id.*). Petitioner argued he had pleaded guilty because he knew his wife was going to testify against him and he also knew a jury could accept her testimony, ignore his, and find him guilty (*id.*). The Court rejected this argument:

> But we also have the fact that Mr. Havner . . . swore under oath . . . that he was guilty of a methamphetamine drug offense on this particular day. He did not offer an *Alford* plea. He did not indicate that he thought the Government could prove him guilty of his offense although he was not guilty, therefore he was going to plead guilty. He did not offer any concerns at all about this particular count. If he had, the Court would probably not have taken his plea . . . [F]or the Court to accept Mr. Havner's position would mean that the Court would have to find he lied to the Court when he indicated he was guilty of a drug-trafficking offense on that particular date.

(*id.* at 41–42).

Petitioner's counsel then responded: "I certainly don't want you to view it that way. If there was an error made, it was my error" (*id.* at 42). He then added, "If he should have entered an *Alford* plea on that incident on that date, that was my error" (*id.* at 43). The Court rejected this argument: "[T]he Court does not think [Mr. Havner's counsel] should bear any responsibility for the decision that Mr. Havner made not to raise a problem with this particular count." (*id.* at 47–48).

The Court then concluded Petitioner's resistence to his guilty plea indicated a lack of acceptance of responsibility and concluded Petitioner was not entitled to a three-level reduction on that basis. Accordingly, the Court calculated Petitioner's Guideline range to be 235 to 240 months. The Court then sentenced Petitioner at the bottom of the range, at 235 months (*id.* at 59–60).

After exhausting his appeals, Petitioner timely filed this motion to vacate, set aside, or correct his sentence. Petitioner seeks relief contesting the validity of his guilty plea and asserting several instances in which he claims to have received ineffective assistance of counsel. In addition, in his reply brief, Petitioner appears to assert a claim of actual innocence.

## II. STANDARD OF REVIEW

This Court must vacate and set aside the sentence if it finds "the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255. Under Rule 8(a) of the Rules Governing Section 2255 Proceedings In The United States District Courts, the Court is to review the answer, any transcripts, and records of prior proceedings and any materials submitted under Rule 7 to determine whether an evidentiary hearing is warranted.

When a defendant files a § 2255 motion, he must set forth facts which entitle him to relief. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961). "Conclusions, not substantiated by allegations of fact with some probability of verity, are not sufficient to warrant a hearing." *Green v. Wingo*, 454 F.2d at 53; *O'Malley*, 285 F.2d at 735 (citations omitted). A motion that merely states general conclusions of law without substantiating allegations with facts, is without legal merit. *Loum v. Underwood*, 262 F.2d 866, 867 (6th Cir. 1959), *United States v. Johnson*, 940 F. Supp. 167, 171 (W.D. Tenn. 1996).

To warrant relief under 28 U.S.C. § 2255 because of constitutional error, the error must be one of constitutional magnitude which had a substantial and injurious effect or influence on the

proceedings. *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993) (citation omitted) (§ 2254 case); *Clemmons v. Sowders*, 34 F.3d 352, 354 (6th Cir. 1994); *see also United States v. Cappas*, 29 F.3d 1187, 1193 (7th Cir. 1994) (applying *Brecht* to a § 2255 motion). If the sentencing court lacked jurisdiction, then the conviction is void and must be set aside. *Williams v. United States*, 582 F.2d 1039, 1041 (6th Cir.), *cert. denied*, 439 U.S. 988 (1978). To warrant relief for a nonconstitutional error requires a showing of a fundamental defect in the proceedings that resulted in a complete miscarriage of justice or an egregious error inconsistent with the rudimentary demands of fair procedure. *Reed v. Farley*, 512 U.S. 339, 354 (1994); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir.), *cert. denied*, 517 U.S. 1200 (1996).

**III.   ANALYSIS**

In this motion, Petitioner raises three grounds for relief. First, Petitioner argues his guilty plea on Counts Five and Six, related to the February 2001 fire, was invalid. Second, Petitioner asserts numerous instances in which he received ineffective assistance of counsel at the trial and appellate levels. Third, Petitioner contends newly discovered evidence demonstrates his actual innocence on Counts Five and Six. The Court considers each of those grounds in turn.

**A. Validity of Petitioner's Guilty Plea**

Petitioner presents four separate reasons which he argues independently render invalid his guilty plea: 1) he did not understand the nature of the charges against him; 2) he did not have a full understanding of the consequences of his guilty plea; 3) the guilty plea was entered without a sufficient factual basis; and 4) his guilty plea was coerced. The Court concludes each of these arguments is without merit.

*1. Nature of the Charges*

Before accepting a guilty plea, a district court is required to ensure a defendant understands the nature of the charge against him. *See* Fed. R. Crim. P. 11(c). "To satisfy this requirement, a district court judge in a simple case need only read the indictment to the defendant and permit the defendant to ask questions about the charges. While a more thorough explanation may be necessary if the charges are complex, ultimately all that is required is that the district court be satisfied, after discussion with the defendant in open court, that the defendant understands the elements of the offense." *United States v. Webb*, 403 F.3d 373, 379 (6th Cir. 2005) (citations and internal quotations omitted); *see also United States v. Edgecomb*, 910 F.2d 1309, 1313 (6th Cir. 1990) (the elements of a charge need not be explained further by the district court where the charge "is simple enough for a lay person to understand"). In this case, during the rearraignment, the Court described to Petitioner the elements of the charges and the facts necessary to prove these charges at trial (Court File No. 108 at 14–15). In addition, Petitioner himself indicated he understood these charges when they were presented (*id.*). In making this argument now, Petitioner does not identify what aspect of attempting to manufacture methamphetamine, or possessing the components necessary to manufacture methamphetamine, is difficult for a lay person to understand. *See Edgecomb*, 910 F.2d at 1313. Accordingly, this argument is without merit.

*2. Consequences of his Guilty Plea*

Petitioner argues his guilty plea was invalid because he did not understand the consequences of pleading guilty. Essentially, Petitioner argues his plea is invalid because he did not realize he would be subject to a sentencing enhancement as a result of the fire on February 19, 2001. The Sixth Circuit has indicated, however, a defendant need not know how his guilty plea will affect his

9

sentence in order to satisfy the requirement that a guilty plea be made knowingly. *See Ruelas v. Wolfenbarger*, 580 F.3d 403, 408–09 (6th Cir. 2009) ("[A] defndant need not know all the possible consequences of his plea, like the loss of his right to vote or own a gun, or the effect on [his] future sentence . . . ."). Rather, the defendant need only be aware of the maximum sentence to which he is exposed. *Id.* In this case, the record indicates Petitioner was advised of the statutory maximum penalty he would face by pleading guilty to Counts Five and Six. The Constitution does not require Petitioner have understood his actual sentence would be enhanced in light of conduct associated with the crimes to which he was admitting.

### 3. Sufficient Factual Basis

Petitioner argues his guilty plea to Counts Five and Six was entered without a sufficient factual basis. *See* Fed. R. Crim. P. 11(c). As reproduced in full above, the transcript of Petitioner's rearraignment indicates a more than sufficient factual basis was delivered by the Government prior to Petitioner's guilty plea. With respect to Counts Five and Six, the Government expressly indicated these counts were associated with the house fire which occurred in February 2001 (Court File No. 108 at 19–23). The Government advised the house fire resulted from the attempt to manufacture methamphetamine–as alleged in Count Five–and an investigation had indicated the presence of chemicals and other items used in the manufacturing process–as alleged in Count Six. Accordingly, the Court concludes Petitioner's guilty plea was supported by a sufficient factual basis.

### 4. Coercion

Petitioner argues his guilty plea was coerced because he was unaware he would receive a sentencing enhancement for his role in the February 2001 house fire. As stated previously, a defendant need not know his future sentence in order for a guilty plea to be considered knowing and

voluntary. *See Ruelas*, 580 F.3d at 408–09. Because Petitioner knew the maximum punishment he was facing, Petitioner was not "coerced" or otherwise tricked into pleading guilty to Counts Five and Six.

**B. Ineffective Assistance of Counsel**

Petitioner argues his Sixth Amendment right to counsel was violated when his counsel rendered ineffective assistance in several instances: 1) when trial counsel advised Petitioner to plead guilty; 2) when he failed to move for an extension of the deadline for plea bargaining; 3) when he failed to object to the drug quantity; and 4) when appellate counsel failed to raise the validity of his guilty plea on direct appeal.

*1. Applicable Law*

The Sixth Amendment provides, in pertinent part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." A defendant has a Sixth Amendment right not just to counsel, but to "reasonably effective assistance" of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). In *Strickland*, the Supreme Court set forth a two-pronged test for evaluating claims of ineffective assistance of counsel:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687.

In considering the first prong of the test set forth in *Strickland*, the appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A

11

defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986).

The second prong of the *Strickland* test requires the petitioner to show counsel's deficient performance prejudiced the defense. Thus, "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. The petitioner must show "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. The *Strickland* Court emphasized both prongs must be established in order to meet the claimant's burden. *Id.* at 697.

### 2. Advise of Counsel to Plead Guilty

Petitioner argues his trial counsel rendered ineffective assistance by failing to investigate the facts and applicable law before recommending Petitioner plead guilty and in failing to advise Petitioner to offer an *Alford* plea to Counts Five and Six. The crux of this argument relies on Petitioner's assertion that he is in fact innocent of Counts Five and Six but he chose to plead guilty to these counts under the weight of the Government's evidence against him.

The Court concludes Petitioner's assertion is contradicted by the record. As the Sixth Circuit has summarized:

> The decision to plead guilty–first, last, and always–rests with the defendant, not his lawyer. Although the attorney may provide an opinion on the strength of the government's case, the likelihood of a successful defense, and the wisdom of a chosen course of action, the ultimate decision of whether to go to trial must be made

12

by the person who will bear the ultimate consequence of a conviction.

*Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003). In this case, Petitioner has not offered any evidence which suggests his trial counsel did anything but simply that. Defendant was faced with overwhelming proof of his guilt on these counts: he was present at the scene of the house fire, he was injured in the explosion, his injuries were consistent with someone operating an illegal methamphetamine laboratory, and his wife testified he was participating in the laboratory. Bolstering this evidence, Petitioner himself admitted in open court he was guilty on these counts, and "[s]olemn declarations in open court carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977). In addition, the record bears no evidence Petitioner privately told his counsel he was in fact innocent of these charges prior to entering a guilty plea. Only Petitioner knew for certain whether he was guilty or not guilty. His counsel had no obligation to look for evidence vindicating Petitioner, in the face of Petitioner's own willingness to admit his guilt. Accordingly, Petitioner's counsel's performance during rearraignment did not fall below the minimum standard required by the Sixth Amendment.

### *3. Failure to Request Extension of Plea Deadline*

Petitioner argues his trial counsel rendered ineffective assistance in failing to request an extension of his plea deadline. This argument is based upon the false assumption that the Court would have extended the plea deadline had Petitioner's counsel made such a motion. The record indicates the Court had already extended the deadline once on multiple occasions. Deadlines are set for a reason, and it is not a foregone conclusion the Court would have granted Petitioner additional time. Indeed, the Court's unwillingness to accept the late-filed plea agreement is a strong indication the Court was unwilling to grant any further continuances in Petitioner's case. Moreover,

13

the Court's rejection of Petitioner's plea agreement did not force Petitioner to offer an unconditional plea of guilty to the indictment. After the Court rejected the plea agreement on the morning of trial, Petitioner was free to have proceeded to trial as scheduled. Thus, no prejudice resulted from counsel's failure to move for a continuance of trial and extension of the plea deadline.

### *4. Failure to Object to Drug Quantity*

Petitioner argues his counsel rendered ineffective assistance by failing to object to the drug quantity. Petitioner does not offer any evidence suggesting the drug quantity calculations were erroneous. Because counsel has no duty to raise frivolous objections, *see Holmes v. United States*, 281 F. App'x 475, 482 (6th Cir. 2008), this argument is without merit.

### *5. Validity of Guilty Plea on Appeal*

Petitioner's argues his appellate counsel rendered ineffective assistance by failing to raise the validity of his guilty plea on appeal. The Supreme Court has held "the Constitution guarantees criminal defendants only a fair trial and a competent attorney. It does not insure that defense counsel will recognize and raise every conceivable constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982). "Accordingly, ineffective assistance of appellate counsel claims are governed by the same *Strickland* standard as claims of ineffective assistance of trial counsel." *Shanebergner v. Jones*, ___ F.3d ___, No. 07-2211, 2010 WL 2794195, at *3 (6th Cir. July 16, 2010) (citing *Smith v. Robbins*, 528 U.S. 259, 285 (2000)). As discussed above, the constitutional challenges to Petitioner's guilty plea are without merit. Thus, appellate counsel's failure to raise the issue was not unreasonable and did not result in prejudice to Petitioner. Petitioner suffered no deprivation of his right to appellate counsel under the Sixth Amendment.

**C. New Evidence**

Petitioner's final ground for relief relies on "newly discovered evidence" of his actual innocence on Counts Five and Six.[3] This evidence consists of a declaration from one of the children who was living in the home destroyed by the methamphetamine laboratory explosion (Court File No. 148). The witness states he left the home shortly before the explosion to go ride his bicycle (*id.*). As he was leaving the house, the witness states he saw Petitioner outside of the home working on a vehicle. From this declaration, Petitioner argues he is actually innocent of Counts Five and Six.

To make out a claim of actual innocence, Petitioner must support his allegation of federal constitutional error with new reliable evidence that was not known or unavailable at the time he entered his guilty plea. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Schlup v. Delo*, 513 U.S. 298, 324 (1995); *Connolly v. Howes*, 304 F. App'x 412, 417 (6th Cir. 2008). In this case, Petitioner fails to offer any evidence previously unknown or unavailable to him. Because Petitioner himself states he ran into the burning house to make sure the children were safe, the Court concludes Petitioner must have known the children witnessed the house fire. Thus, this declaration from one of these children does not constitute new evidence.

Moreover, the declaration is not exculpatory. It is directly contradicted by Petitioner's wife's testimony, Petitioner's own admission of guilt, and Petitioner's injuries from the fire. Accordingly, Petitioner is not entitled to relief on this claim.

## IV.  CONCLUSION

For the reasons discussed above, Petitioner is not entitled to relief under § 2255.

---

[3]The Court notes this ground may be time-barred, as Petitioner did not raise the issue of new evidence until his reply brief, filed on November 20, 2008 (Court File No. 147). Petitioner's direct appeal concluded when his application for writ of certiorari was denied on July 30, 2007 (Court File No. 136). Nevertheless, because Petitioner is not entitled to relief on the merits, the Court addresses this ground.

15

Accordingly, Petitioner's motion to vacate, set aside, or correct his sentence (Court File No. 137) will be **DENIED.** An appropriate Judgment Order shall enter.

    **/s/**
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**